# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| VALUTA CORPORATION, INC., and PAYAN'S FUEL CENTER, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> FINANCIAL CRIMES ENFORCEMENT NETWORK, *et al*. <br><br> *Defendants*. | Civil Case No. 3:25-cv-00191-LS |

## PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION

**INSTITUTE FOR JUSTICE**

Andrew K. Ward (NY Bar No. 5364393)*
Elizabeth L. Sanz (CA Bar No. 340538)*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320

Robert E. Johnson (DC Bar No. 1013390)*
16781 Chagrin Blvd., Suite 256
(703) 682-9320

Christen Mason Hebert (TX Bar No. 24099898)
Jeffrey Rowes (TX Bar No. 24104956)*
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936

Katrin Marquez (FL Bar No. 1024765)*
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600

* Admitted *Pro Hac Vice*

*Attorney for Plaintiffs*

Under Federal Rule of Civil Procedure 23, Plaintiffs move for to certify the putative class in this case. Plaintiffs conferred with counsel for the government per Local Rule 7(g). The government states that it is opposed.

## INTRODUCTION

This case challenges a "geographic targeting order," issued by Defendant FinCEN, that the Court has already found likely unlawful. Doc. 31. When agency action is unlawful, the Administrative Procedure Act states that courts *shall* "'set aside'—*i.e.*, formally nullify and revoke—[that] action." *Data Mktg. P'ship, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022). Thus, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (cleaned up).[1] The Fifth Circuit could not be clearer that "relief under Section 706 [of the APA] … is not party-restricted." *Id.*[2]

That said, Plaintiffs acknowledge that there is an ongoing debate about extra-party relief in cases *not* brought under the APA. *See Trump v. CASA, Inc.*, __ S. Ct. __, 2025 WL 1773631, at *8 n.10 (June 27, 2025) (prohibiting nationwide injunctions but explaining that "[n]othing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal

---

[1] The Supreme Court has granted certiorari on other grounds. 145 S. Ct. 1039 (2025).

[2] *See also, e.g.*, *Tex. Corn Producers v. EPA*, __ F.4th __, 2025 WL 1741481, at *17 (5th Cir. June 24, 2025) ("Fifth Circuit precedent establishes that Section 706 extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation …" (internal quotation marks omitted)); *Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 780 (5th Cir. 2024) ("In addition to being statutorily permissible, and required in this circuit, universal vacatur is appropriate here, because a party-specific injunction would thwart the uniformity and predictability of the arbitration process.").

courts to vacate federal agency action"). Plaintiffs are committed to doing whatever it takes to ensure that FinCEN's illegal order does not harm them or anyone else. So, out of an abundance of caution, they offer this motion for class certification to ensure the availability of sufficiently broad relief. Again, repeated and binding holdings from the Fifth Circuit mean that the Court need not ever reach this motion. But, in the unlikely event that the Court believes that vacatur is not the appropriate remedy under the APA, it should certify a class so that relief is available beyond the named parties. *See generally* Ruiz Decl. (discussing harm to putative class member); Carpio Decl. (same). The rest of this brief explains why, following the structure of Appendix A to the local rules.

1. **Statement of the case**

On March 14, 2025, FinCEN issued what it calls an order, effective April 14, 2025, requiring money-services businesses (MSBs) in thirty zip codes near the border to file a report for every cash transaction over $200. *See Issuance of a Geographic Targeting Order Imposing Additional Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border*, 90 Fed. Reg. 12106 (the "Border GTO"). Because this sudden departure from the normal $10,000 reporting threshold instantiated both a sweeping financial surveillance regime and an avalanche of new paperwork, three lawsuits quickly followed. Plaintiffs here alleged five fundamental defects of the Border GTO, that it (1) violates the Fourth Amendment, (2) is arbitrary and capricious, (3) is ultra vires, (4) was promulgated without required notice-and-comment, and (5) violates the non-delegation doctrine. Doc. 1 at ¶¶ 147–89. On June 24, this Court agreed that the Border GTO was likely unlawful and entered a temporary restraining order. Doc. 31. Meanwhile, the courts in the other two lawsuits have issued preliminary injunctions. *See Tex. Ass'n for Money Servs. Bus. v. Bondi*, No. 5:25-cv-00344, 2025 WL 1540621

(W.D. Tex. May 19, 2025); *Novedades y Servicios, Inc. v. FinCEN*, No. 3:25-cv-00886, 2025 WL 1501936 (S.D. Cal. May 21, 2025).

2. **Proposed class definition**

Plaintiffs propose the following class: "All money-services businesses, other than those that are plaintiffs in *Texas Association for Money Services Businesses v. Bondi*, No. 5:25-cv-00344 (W.D. Tex.), that are doing or will do business in the zip codes 78520, 78521, 79901, 79902, 79903, 79905, 79907, 79935, 78503, 78557, 78572, 78577, 78596, 78852, 78040, 78041, 78043, 78045, or 78046." Temporally, the class is limited to MSBs that will benefit from prospective relief. Geographically, the class is limited to MSBs in targeted *Texas* zip codes. By not reaching into California, where *Novedades* is underway, and by carving off the *TAMSB* plaintiffs, the proposed class certification should lead to consistent judgments.

3. **Plaintiffs' qualifying grievances**

Plaintiffs fall squarely within the proposed class because they are MSBs, and, by doing business in zip codes 79901 (Valuta) or 79905 (Payan's), they are subject to the unlawful requirements of the Border GTO. Neither is a plaintiff in the *TAMSB* case.

4. **The applicability of Rule 23(b)(2)**

FinCEN's issuance of an unlawful Border GTO is an appropriate subject of class certification under Rule 23(b)(2) because FinCEN "has acted … on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Border GTO affects every member of the proposed class, it imposes the same unlawful obligation on all of them, and the injuries it inflicts would be remedied for every class member by one injunction prohibiting enforcement (or corresponding declaratory relief). *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 366–68 (5th Cir. 2017) (explaining, in a suit against government officials, that Rule 23(b)(2) applies when there is "common behavior by the defendant

towards the class"); *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 11115194, at *8 (N.D. Tex. July 1, 2021) (certifying 23(b)(2) class when "the USDA act[ed] on grounds that appl[ied] generally to the classes in administering [a] program").

5. **The Rule 23(a) criteria**

Besides meeting the requirements of Rule 23(b)(2), the proposed class also meets the four well-known prerequisites of Rule 23(a): the numerosity of the class, the commonality of the claims, the typicality of the named plaintiffs' claims, and the adequacy of representation by the named plaintiffs.

a. **Numerosity**

First, the proposed "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally the numerosity element is met if the potential number of plaintiffs exceeds forty." *Boles v. Moss Codilis, LLP*, No. SA-10-CV-1003-XR, 2012 WL 12861080, at *8 (W.D. Tex. Jan. 17, 2012); *see also, e.g.*, *Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-CV-01728, 2025 WL 608316, at *1 (S.D. Tex. Feb. 25, 2025) ("Any class consisting of more than forty members should raise a presumption that joinder is impracticable."); *Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302, 312 (S.D. Tex. 2024) (same). And here, FinCEN's own data reflect forty-one MSBs currently doing business in the covered zip codes—and that is after removing the *TAMSB* plaintiffs *and* removing possible double counting just to be conservative. *See* Johnson Decl. Ex. A. The actual number of proposed class members is greater because there are other MSBs (such as Western Union and MoneyGram) operating in the covered zip codes; FinCEN just does not list them because they are headquartered elsewhere. *See* Light Decl. ¶ 5; Payan Decl. ¶ 4. And these numbers are confirmed by the director of FinCEN herself: despite the TROs and injunctions in the other cases, her declaration here suggests that there have been 125 "unique filers" complying with the Border GTO. Doc. 20-1 ¶ 22. In sum, the number of

4

proposed class members is thus between 41 and 125, and that clears the default numerosity threshold of 40. Joinder is additionally impracticable because the proposed class members are strewn across some eight hundred miles of Texas, from El Paso to Brownsville. *See Pedersen*, 345 F.R.D. at 312.

### b. Commonality

Second, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement can be satisfied by a single common contention. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012). Here, Plaintiffs' claims for class-wide injunctive relief turn on legal theories that apply equally to all members of the proposed class, based on one uniform record. There are no questions affecting only individual members that need be answered before issuance of an injunction. And that includes the nature of the injury. At the TRO hearing, the government suggested that "Plaintiffs … have made a showing of irreparable harm that is unique to those businesses," Tr. at 65:20–66:4, but that is wrong. At a minimum, *every* proposed class member must spend time and energy complying with the unlawful Border GTO, and "complying with an agency order later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (cleaned up). Thus, every question necessary to judgment and an injunction can be resolved on a class-wide basis.

### c. Typicality

Third, and for similar reasons, "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). This requirement is met where the claims of the class and the proposed class representatives arise from the same policy or practice and are based on the same legal theories. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, Plaintiffs claim that the Border GTO imposes illegal record keeping requirements in violation of

5

the Fourth Amendment, the APA, and the non-delegation doctrine. Doc. 1 at ¶¶ 147–89. Each proposed class member (like Plaintiffs) is subject to the challenged Border GTO, and each proposed class member (like Plaintiffs) would invoke the same constitutional and statutory principles to challenge the Border GTO.

### d. Adequacy

Finally, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs are part of the class, were burdened by the Border GTO like every other member of the class, and want relief from the Border GTO so they can get back to running their businesses as usual. *See, e.g.*, *San Antonio Hisp. Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 444 (W.D. Tex. 1999) (finding requirement met where "all class members are united in asserting a common right"). They actively prepared for and participated in the *TAMSB* PI hearing, despite not being plaintiffs in that case.

#### i. Conflicts

Plaintiffs' interests do not conflict with the interests of the class members, as there are no "antagonistic interests between class members and unnamed members." *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 195 (W.D. Tex. 1998). Every member of the proposed class—including Plaintiffs—is entitled to relief from the Border GTO, and Plaintiffs seek to achieve that result for the entire class. Light Decl. ¶ 6; Payan Decl. ¶ 5.

#### ii. Subclasses

Subclasses are not required now, and Plaintiffs are unaware of any reason they would be required later.

*iii. Capability of counsel*

Plaintiffs are represented *pro bono* by The Institute for Justice, a nonprofit, public-interest law firm that, since its founding in 1991, has litigated constitutional issues nationwide. The firm has litigated class actions in state and federal court, including against:

- the federal government,[3]
- New York City,[4]
- Philadelphia,[5]
- the Cities of Indio and Coachella,[6]
- and prosecutors in Indiana.[7]

As the Southern District of Indiana observed in 2022, the Institute for Justice "has significant experience in complex litigation," its "attorneys know the law," and it "apparently has the resources to pursue its litigation to the highest level of appeal." *Sparger–Withers v. Taylor*, 628 F. Supp. 3d 821, 833 (S.D. Ind. 2022).

Plaintiffs' specific attorneys are also well positioned to litigate the claims here—most clearly because they represent the plaintiffs in the other two cases challenging the Border GTO,

---

[3] *Snitko v. United States*, No. 21-cv-4405 (C.D. Cal. Oct. 12, 2021) (D. Ct. Doc. 78) (certifying class of property owners challenging FBI searches and seizures as unlawful); *see generally Snitko v. United States*, 90 F.4th 1250 (9th Cir. 2024).

[4] *Cho v. City of New York*, No. 16-cv-7961 (S.D.N.Y. Oct. 2, 2020) (D. Ct. Doc. 111) (approving systemic-relief settlement and certifying a class relating to coercive property seizures).

[5] *Sourovelis v. City of Philadelphia*, No. 14-cv-4687, 2021 WL 344598, at *1 (E.D. Pa. Jan. 28, 2021) (appointing the Institute for Justice as class counsel and approving federal consent decree in challenge to civil-forfeiture procedures).

[6] *Morales v. City of Indio*, No. RIC1803060 (Cal. Super. Ct. filed Feb. 13, 2018).

[7] *Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 833 (S.D. Ind. 2022) (appointing Institute for Justice attorneys class counsel).!

7

both of which have seen the issuance of preliminary injunctions because of the likelihood of success on the merits. *See Novedades*, 2025 WL 1501936; *TAMSB*, 2025 WL 1540621. Beyond that, Plaintiffs' lead counsel, Robert Johnson, has litigated other cases challenging agency action under the Administrative Procedure Act, Johnson Decl. ¶ 4, and has the class experience discussed next.

    *iv. Counsel's class experience*

Plaintiffs' counsel Robert Johnson has represented certified or putative classes three times. *See* Johnson Decl. ¶ 4. He was lead counsel in *Snitko v. United States*, No. 21-cv-4405 (C.D. Cal.), and, after a class was certified, litigated that case successfully on appeal in the Ninth Circuit—obtaining a decision that the FBI violated the Fourth Amendment by breaking open and searching an entire vault of safe deposit boxes. *See* 90 F.4th 1250, 1259, 1266 (9th Cir. 2024). He also was lead counsel in *Cho v. City of New York*, No. 16-cv-7961 (S.D.N.Y.), and successfully appealed the dismissal of that case to the Second Circuit. *See* 910 F.3d 639 (2d Cir. 2018). Other counsel at the Institute for Justice replaced Mr. Johnson as lead counsel following that appeal, and the defendants ultimately agreed to a settlement providing systemic relief for the putative class. *See* No. 16-cv-7961, Doc. 111, at 4. Finally, Mr. Johnson is also co-counsel in a putative class action in *Thomas v. Humboldt County*, No. 22-cv-5725 (N.D. Cal.), and, together with co-counsel, successfully appealed the dismissal of that case to the Ninth Circuit, *see* 124 F.4th 1179 (9th Cir. 2024). That case remains pending in the district court. In addition to representing certified and putative classes, Mr. Johnson also has experience opposing class certification, and he has defended class actions on the merits. Johnson Decl. ¶ 4. Plaintiffs' other attorneys have not represented classes, *id.* ¶¶ 5–9, but other attorneys at the Institute for Justice have experience litigating class actions and are available to assist with the case as circumstances warrant, *id.* ¶ 3.

8

v. *Counsel's current putative class actions*

Plaintiffs' counsel Robert Johnson is now handling one other case with class allegations. *Id.* ¶ 4. None of Plaintiffs' other counsel are handling other cases with class allegations. *Id.* ¶¶ 5–9.

6. **Related actions**

As the Court knows, there are two other pending challenges to the Border GTO: the *TAMSB* case before Judge Biery and the *Novedades* case in the Southern District of California. The team representing Plaintiffs here is also leading these other cases. By excluding MSBs in California and the *TAMSB* plaintiffs, the proposed class definition is designed to avoid the possibility of inconsistent judgments.

7. **Discussions with Plaintiffs**

Plaintiffs' counsel have discussed and thoroughly explained to both named Plaintiffs the nature of a class action and the potential advantages and disadvantages to the named plaintiffs that come with proceeding via the class mechanism rather than individually.

8. **Proposed notices**

Notice is not required in a Rule 23(b)(2) class action for injunctive relief. *See* Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) ("(b)(2) does not require that class members be given notice and opt out rights").

9. **Settlement**

No settlement negotiations have occurred. Settlement with Plaintiffs on an individual basis is unlikely, as the government has vigorously defended the Border GTO across three cases, and the named Plaintiffs are committed to challenging the Border GTO both on their own behalf and on behalf of the putative class, Light Decl. ¶ 6; Payan Decl. ¶ 5.

### 10. Other matters

There are no other matters that Plaintiffs deem necessary and proper to the expedition of a decision on this motion or the speedy resolution of the case on the merits.

## CONCLUSION

As discussed, certification of a class is *not* necessary to address unlawful agency action. The APA already prescribes the default remedy of vacatur. As a backstop, however, Plaintiffs are also moving for class certification. If necessary to provide broad final or interim relief, the Court should certify a class under Rule 23(b)(2) and appoint Plaintiffs' counsel to represent the class.

Dated: July 2, 2025

Respectfully submitted,

/s/ Andrew K. Ward

Christen Mason Hebert (TX Bar No. 24099898)
Jeffrey Rowes (TX Bar No. 24104956)*
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org

Andrew K. Ward (NY Bar No. 5364393)*
Elizabeth L. Sanz (CA Bar No. 340538)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
award@ij.org
bsanz@ij.org

Katrin Marquez (FL Bar No. 1024765)*
INSTITUTE FOR JUSTICE
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600
kmarquez@ij.org

Robert E. Johnson (DC Bar No. 1013390)*
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
rjohnson@ij.org

\* Admitted *Pro Hac Vice*

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Andrew K. Ward
Andrew K. Ward
