UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| VALUTA CORPORATION, INC. and PAYAN FUEL CENTER, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> FINANCIAL CRIMES ENFORCEMENT NETWORK, ANDREA GACKI, in her official capacity as Director of the Financial Crimes Enforcement Network; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; and PAM BONDI, in her official capacity as Attorney General of the United States, <br><br> *Defendants*. | Civil Action No. 3:25-cv-191-LS |

**BRIEF REGARDING REISSUANCE OF
GEOGRAPHIC TARGETING ORDER**

Defendants file this brief in accordance with the Court's Order for Briefing entered on September 22, 2025. ECF No. 64. For the reasons set forth below, Plaintiffs' claims challenging the March 2025 Southwest Border Geographic Targeting Order (the "March 2025 GTO") are not moot.[1] The District Court's forthcoming Preliminary Injunction opinion should issue.

The September 2025 Geographic Targeting Order (the "September 2025 GTO"), issued following the expiration of the March 2025 GTO, is a separate and discrete agency action that

---

[1] In a brief filed last week in the pending appeal from Judge Biery's Preliminary Injunction order in *Texas Ass'n for Money Services Businesses (TAMSB) v. Bondi, et al.,* No. 25-50481 (5th Cir.), No. 5:25-cv-00344 (W.D. Tex.), the defendants have likewise taken the position that expiration of the March 2025 GTO does not render the appeal moot.

does not currently apply to Plaintiffs. Plaintiffs' claims challenging the March 2025 GTO should not be construed as also challenging the September 2025 GTO.

## BACKGROUND

This case arises from Plaintiffs' challenge to a Geographic Targeting Order ("GTO") issued by the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") on March 11, 2025. That GTO expired on September 9, 2025. *See* 31 U.S.C. § 5326(d); *Issuance of a Geographic Targeting Order Imposing Additional Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border*, 90 Fed. Reg. 12,106, 12,107 (Mar. 14, 2025) ("The terms of this Order are effective beginning April 14, 2025 and ending on September 9, 2025.").

On the following day, FinCEN published a second GTO. *See Geographic Targeting Order Imposing Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border*, 90 Fed. Reg. 43,557 (Sept. 10, 2025). The September 2025 GTO establishes a $1,000 (higher than the $200 reporting threshold established by the March 2025 GTO) and applies to a different geographic area, including two Arizona counties not covered by the March 2025 GTO and—relevant here—throughout all of certain Texas counties, including El Paso County, rather than only to certain zip codes within those counties. *Id.* The September 2025 GTO exempts the Plaintiffs in this case, and other money services businesses (MSBs) covered by injunctions preventing the original GTO's application to them, for the duration of those injunctions. 90 Fed. Reg. 43,557 n.7.[2]

---

[2] Although the September 2025 GTO exempts current plaintiffs for the duration of previously entered preliminary injunctions, Defendants do not agree with Plaintiffs' position, ECF No. 62 at 2, that the existing preliminary injunctions bind FinCEN beyond the effective period of the March 2025 GTO.

The Court has ordered the parties to brief how the September 2025 GTO affects the pending complaint's viability, the temporary restraining order ("TRO"), and the preliminary injunction, and whether the parties' arguments supporting and opposing the TRO, the preliminary injunction, and the pending summary judgment motion are, in whole or in part, moot. ECF No. 64.

## DISCUSSION

### A.  Plaintiffs' Claims Challenging the March 2025 GTO Are Not Moot

Plaintiffs' claims in this action challenge the validity of the March 2025 GTO. Under the circumstances of this case, the expiration of the March 2025 GTO does not render those claims moot. Courts have recognized an exception to the doctrine of mootness for disputes that are capable of repetition but will likely evade review. *See Turner v. Rogers*, 564 U.S. 431, 439–40 (2011). Under this exception, a dispute is not moot where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* (alterations omitted) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). Both elements are met here. Given the statutory six-month maximum duration of a GTO, *see* 31 U.S.C. § 5326(d), no geographic targeting order can be fully litigated prior to its expiration. *Consumers' Rsch. v. FCC*, 109 F.4th 743, 753 (5th Cir. 2024) (en banc) (citing favorably the "rule of thumb" that "agency actions of less than two years' duration cannot be fully litigated prior to cessation or expiration" (quoting *Ralls Corp. v. CFIUS*, 758 F.3d 296, 321 (D.C. Cir. 2014))), *rev'd on other grounds*, 145 S. Ct. 2482 (2025). Under the circumstances of this case, the expiration of the March 2025 GTO does not render Plaintiff's challenges to the March 2025 GTO moot.

### B. Plaintiffs' Current Claims Do Not Apply to the September 2025 GTO

Plaintiffs' claims challenging the March 2025 GTO are not moot, and the Court may proceed with issuance of its forthcoming preliminary injunction opinion. However, the September 2025 GTO is a separate and discrete agency action that materially differs from the March 2025 GTO. The claims set forth in Plaintiffs' current live Complaint, ECF No. 1, should not be construed as challenges to the September 2025 GTO. Since the Plaintiffs in this action are exempted from coverage under the September 2025 GTO so long as application of the March 2025 GTO to them in enjoined, *see* 90 Fed. Reg. 43,557 n.7, it is doubtful that they currently have standing to challenge the September 2025 GTO, or that any such challenge would be ripe.

The September 2025 GTO establishes a significantly relaxed reporting threshold as compared to the March 2025 GTO and applies to a different geographic area—though not to Plaintiffs. Even if the September 2025 GTO did apply to Plaintiffs, they acknowledge that these changed features would be relevant to the analysis of their leading claims, *see* ECF No. 62 at 3, including their arbitrary and capricious claim—the only claim on which this Court has found Plaintiffs likely to succeed, *see* ECF No. 31 at 2.

Since Plaintiffs are currently exempt, the September 2025 GTO imposes no burden on them at all at this time.[3] For businesses that are covered, the higher reporting threshold and changed geographic coverage of the September 2025 GTO relative to the March 2025 GTO significantly impacts the burdens it imposes. That alleged burden—central to Plaintiffs' leading

---

[3] This distinguishes the revised ordinances at issue in *Opulent Life Church* and in *Associated General Contractors*, cited therein, since those revised ordinances "disadvantage[d] [plaintiffs] in the same fundamental way" as the initial ordinances. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993)).

claims[4]—is mainly associated with transactions involving between $200 and $1,000.[5] *See, e.g.*, ECF No. 5-3 at ¶¶ 13–14 (Payan's testimony that most check-cashing transactions are for amounts over $200, that "the average amount . . . is about $400"; and that "[p]aychecks usually don't go over $1,800").

Claims of burden are central to Plaintiffs' arbitrary and capricious and Fourth Amendment challenges, as well as to their arguments about the appropriate remedy. *See, e.g.*, ECF No. 39 at 9; ECF No. 41 at 19 (arguing that the GTO fails APA review because the agency did not explain how "the benefits [of the GTO] could offset the obvious costs of compliance"); ECF No. 41 at 32 (arguing that the GTO is unreasonable under the Fourth Amendment because it "unduly disrupt[s]" their normal business operations); ECF No. 5 at 18 (Fourth Amendment argument that "the GTO is unreasonable because it is immensely burdensome."). On the issue of remedy, Plaintiffs have argued that universal vacatur is required, or that a class-wide injunction would be the next-best means to the same end. ECF No. 46 at 15–16 & n.9. But here, as well, the burden imposed by the agency action under challenge is of central importance, since "[r]emedies must be 'tailored to redress' a plaintiff's injury[.]" *Texas v. United States*, 126 F.4th 392, 420

---

[4] Plaintiffs argue first that the increased reporting threshold and changed geographic scope of the September 2025 GTO do not affect their *ultra vires* and notice-and-comment claims. ECF No. 62 at 2–3. The Court has not yet reached those claims in its TRO or PI orders. *See, e.g.*, ECF No. 31 at 2–3 (declining to reach Fourth Amendment and *ultra vires* claims); Text Order of July 22, 2025 (same).

[5] Aside from the GTO, other state and federal recordkeeping and reporting obligations are triggered by the $1,000 transaction threshold. *See, e.g.*, ECF No. 5-1 at ¶ 16.d. (describing Valuta's existing policies to record customer identification for money orders above $900, for all money transfers, for all check-cashing transactions, and for currency exchanges above $1,000); ECF No. 1 at ¶ 36; Texas Admin. Code 33.31(c) (state law recordkeeping requirements for certain transactions over $1,000).

(5th Cir. 2025) (quoting *Gill v. Whitford*, 585 U.S. 48, 73 (2018)) (limiting vacatur to one plaintiff that had "demonstrated an actual injury caused by the [agency action]").

The September 2025 GTO burdens covered businesses far less than the March 2025 GTO. The burdens to covered businesses are central to Plaintiff's arbitrary and capricious and Fourth Amendment claims. Plaintiffs themselves are not burdened at all by the September 2025 GTO. The Court should not, as Plaintiffs now suggest, construe their challenge to the March 2025 GTO as a challenge to the September 2025 GTO on the assumption that the "bottom line is the same[.]" ECF No. 62 at 3 n.2.

Plaintiffs cite *Putnam v. Williams*, 652 F.2d 497, 499 (5th Cir. 1981), for the proposition that repleading would be unnecessary for them to challenge the September 2025 GTO because "the pleadings may be treated as though they had been amended to conform to the evidence" presented in a motion for summary judgment "when not objected to by the opposite party." ECF No. 62 at 2 n.1; *Putnam*, 652 F.2d at 499. In *Putnam*, the Fifth Circuit affirmed a summary judgment based in part on legal theories not pleaded in the operative complaint. The appeals court was nonetheless free to consider those arguments, since they were based on facts that had been pleaded and since the parties had "fully briefed and argued each of the alternative theories" in their summary judgment briefing. *Putnam*, 652 F.2d at 500. This case presents a decidedly different scenario. Here, Plaintiff's claims are premised on the March 2025 GTO, which has expired. For the reasons discussed above, the capable of repetition yet evading review exception to mootness doctrine allows those claims—challenging the March 2025 GTO—to proceed. *See Turner*, 564 U.S. 439–40. But that does not transform Plaintiffs' claims into a challenge to a subsequently issued GTO that does not currently apply to Plaintiffs and that materially differs from the March 2025 they challenged. Treating those pleadings and briefing as applicable to the

September 2025 GTO would go considerably beyond treating the pleadings "as though . . . amended to conform to the evidence[.]" *Putnam*, 652 F.2d at 500.

## CONCLUSION

The expiration of the March 2025 GTO does not render Plaintiffs' challenges to the March 2025 GTO moot. However, the Court should not treat Plaintiffs' claims challenging the March 2025 GTO as challenging the September 2025 GTO, which does not currently affect Plaintiffs.

Dated: September 29, 2025               Respectfully submitted,

**Justin R. Simmons**
United States Attorney

By:     */s/ Robert D. Green*
        **Robert D. Green**
        Texas Bar No. 24087626
        robert.green3@usdoj.gov
        Angelica A. Saenz
        Texas Bar No. 24046785
        Angelica.Saenz@usdoj.gov
        Assistant United States Attorneys
        U.S. Attorney's Office
        601 NW Loop 410, Suite 600
        San Antonio, Texas 78216
        (210) 384-7362 (phone)
        (210) 384-7312 (fax)

        *Attorneys for Defendants*